UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ARTHUR JOHN BRYANT, ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | 2:13-cv-00218-WTL-WGH |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

Petitioner Arthur Bryant seeks habeas corpus relief with respect to his conviction in the Harrison Superior Court for murder, theft, and obstruction of justice. Having considered the pleadings, the expanded record, and the parties' arguments, and being duly advised, the Court finds that Bryant has not shown his entitlement to relief and that his petition for writ of habeas corpus must be **denied.** In addition, the court finds that a certificate of appealability should not issue. These conclusions on the following facts and circumstances:

1.      In January 2000, Bryant murdered, and concealed the body of his stepmother, Carol. He also sold, pawned and gave away items of personal property belonging to her. His convictions were affirmed in *Bryant v. State*, 802 N.E.2d 486 (Ind.Ct.App. 2004)(*Bryant I*), and the denial of post-conviction relief was affirmed in *Bryant v. State*, No. 31A04-1109-PC-00542 (Ind.Ct.App. Oct. 2, 2012)(*Bryant II*).

2.      In his petition for writ of habeas corpus, Bryant claims that he was denied the effective assistance of counsel at trial. This claim was presented and rejected on the merits in *Bryant II*.

3. Bryant filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The AEDPA "place[s] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner "with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). With respect to claims which the state courts decided on the merits,

> [f]ederal habeas relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).

*Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). As the United States Supreme Court recently explained,

> AEDPA's standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015)(internal quotation marks and citations omitted).

4. The first step under § 2254(d)(1) is "to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing *Williams v. Taylor*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). As noted, the claim in this action is that Bryant was denied the effective assistance of counsel. The Sixth Amendment guarantees a criminal accused the right to assistance of counsel, and the right to counsel is the right to the

effective assistance of counsel.*@McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). This guarantee exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984).

5.  *Strickland* provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs Bryant's claim.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted).

6.  The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of the claim that Bryant presents, however, AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable--a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles,* 556 U.S. at 123 (internal citations and quotations omitted). The emphasis on deferential review could not be more clear:

> Federal habeas review thus exists as "a guard against extreme malfunctions in the

> state criminal justice systems, not a substitute for ordinary error correction through appeal." This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)(citations and some quotations omitted). The pertinent question for the present habeas review is whether the Indiana state courts "unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted).

    7.    The Indiana Court of Appeals first recognized that *Strickland* established the controlling law and that two elements must be established to support a showing of ineffective assistance of counsel. *Bryant II,* at p.9. *Carter v. Douma*, No. 13-3312, 2015 WL 4646664, at *7 (7th Cir. Aug. 6, 2015)("Under *Strickland's* familiar two-pronged standard, Carter must show both that his counsel's performance was deficient and that he was prejudiced as a result.")(citing *Harrington v. Richter,* 562 U.S. 86, 104 (2011)). "For the first element, this court's review of the attorney's performance is "highly deferential" and "reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Daniels v. Knight,* 476 F.3d 426, 433-34 (7th Cir. 2007)(citing *Strickland,* 466 U.S. at 689). The prejudice inquiry looks at all available evidence, not just that favoring the defense. *Strickland,* 466 U.S. at 695 ("In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."). In assessing the relative weight of the new mitigating evidence, a reviewing court compares and

contrasts the new evidence with that from the trial."); *see also Wong v. Belmontes,* 130 S. Ct. 383, 390 (2009)("[T]he reviewing court must consider all the evidence--the good and the bad-- when evaluating prejudice.").

    8.    The Indiana Court of Appeals reviewed and carefully evaluated each specification of ineffective assistance of counsel and it is undisputed that the defense strategy was to portray Lee, Carol's husband and Bryant's biological father, as the perpetrator of Carol's murder and to focus the jury's attention on him.

> a.    The trial court admitted evidence of statements that Bryant made during his consultation with his mother at the police station, prior to being advised of his rights. On appeal, the police conduct was found to have been improper, but because some of this evidence was admitted without objection—and Bryant's objection to the first such witness through whom these statements were sought to be admitted had been overruled—it was concluded that further objection would have been futile. *Bryant II,* at p. 8. In denying Bryant's petition for rehearing on this point, the Indiana Court of Appeals was rejected, with the emphasis on the prejudice prong of the *Strickland* test:
>
>> Bryant was not prejudiced by his counsel's failure to object because there was substantial independent evidence of his guilt such that it is unlikely the erroneously admitted evidence played a role in his conviction. See *Sundling v. State,* 679 N.E.2d 988 (Ind.Ct.App. 1997) (erroneous admission of evidence is harmless where there was substantial independent evidence of guilt such that erroneously admitted evidence likely played no role in the conviction). Here, jeans were found in the trunk of the vehicle where Bryant's step-mother's body was found. DNA tests of the jeans revealed that they were stained with Bryant's step-mother's bodily fluids and that Bryant had worn them. Bryant gave away some of his step-mother's jewelry and pawned some of her property. He showed the car to his friends, while his step-mother's body remained in the trunk, and drove around in that car for a number of days. In short, the erroneously admitted evidence likely had no impact on Bryant's conviction given the strength of the State's case against him.
>
> *Bryant v. State*, 980 N.E.2d 450 (Ind.Ct.App. 2012).
>
> b.    During the trial testimony of Alice Alcorn, she provided evidence that Bryant had angrily stated he would pay back his stepmother before he turned eighteen and that on another occasion she heard Bryant state that he would kill his stepmother. Bryant argued in *Bryant II* that his trial counsel were ineffective for not objecting to Alcorn's testimony as prior misconduct evidence under Indiana Evidence Rule 404(b), for not moving to strike

it, and in not impeaching Alcorn with her prior statements that did not mention any threat by him to kill his stepmother. The Indiana Court of Appeals held that the statement was not impermissible 404(b) evidence under Indiana law because the testimony was relevant to show Bryant's motive and intent. Thus, an objection would not have been sustained. *Bryant II,* at p. 11.

c.      Bryant argues that his counsel was ineffective based on the failure to keep out evidence regarding Bryant's anger, temper, and prior juvenile adjudications. It was held that the first of these were not evidence of prior bad acts, and hence would not have been excluded on that basis, and Bryant himself had testified to his past convictions and juvenile adjudications. *Bryant II,* at pp. 18-21. For various reasons, the conduct of counsel in relation to this evidence was based on their reasonable strategy of portraying Lee as the perpetrator and to be receptive to Bryant's version. It is of no consequence that Bryant's counsel were critical of their own performance the post-conviction relief hearing. *See Ebert v. Gaetz*, 610 F.3d 404, 415 (7th Cir. 2010)(citing cases).

d.      Bryant argues that his attorneys failed to impeach portions of Lee's testimony. The Indiana Court of Appeals found, however, that "[t]rial counsel thoroughly cross-examined Lee and conducted as much impeachment of his testimony as the trial court would allow." *Bryant II,* at pp. 23-24. Bryant then failed to support his argument that he was prejudiced in various ways by the limitation on Lee's cross-examination. *Id.* at p.24.

e.      Tracy Beemer was interviewed by Detective Bauman prior to trial. Bauman informed Bryant's attorneys that Beemer would not provide evidence that was favorable to Bryant's defense. It was developed at the post-conviction relief hearing that this statement was untrue and that Beemer could have testified to statements Carol made that would have been helpful to Bryant's defense by supporting his defense that Lee was the perpetrator. The Indiana Court of Appeals found that it could not determine if failure of Bryant's counsel to interview Beemer was a matter of trial strategy. As illustrated by decisions such as *Campbell v. Reardon*, 780 F.3d 752, 763 (7th Cir. 2015)("The fundamental problem with the state court's analysis—which made it not just incorrect but unreasonable—is that it ignored counsel's duty to perform a reasonable pretrial investigation *before* committing to a defense strategy.")(emphasis in original), this finding was an unreasonable application of the performance prong established in *Strickland*. It is true, as the respondent argues, that "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow,* 134 S. Ct. 10, 17 (2013) (quoting *Strickland,* 466 U.S. at 689). This is hardly a situation, however, where the demonstrated information Beemer could have provided to Bryant's attorneys before trial could be understood as "the absence of evidence." Bryant is not entitled to relief on this claim, however, because the Indiana Court of Appeals proceeded to discuss the prejudice prong of *Strickland* and reasonably explained that Bryant was not prejudiced because Beemer would not have been permitted to testify to the statements allegedly made to her by Carol. *Bryant II,* at pp. 25-27. The reason for this holding was that Carol's alleged statements would have been inadmissible hearsay and were not admissible under any exception to the hearsay rules.

9. Each specification of ineffective assistance of counsel was assessed by the Indiana Court of Appeals and, with the one exception noted, the decisions of that Court neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Yarborough v. Alvarado,* 541 U.S. 652, 661 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'") (quoting *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003)). "This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard 'seriously and produce[d] an answer within the range of defensible positions.'" *Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012) (quoting *Mendiola v. Schomig,* 224 F.3d 589, 591–92 (7th Cir. 2000)). The Indiana Court of Appeals did so. The one exception, moreover, did not extend to include the prejudice prong of *Strickland*. This is critical because "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland.*" *Wong v. Belmontes,* 558 U.S. 15, 16 (2009) (*per curiam*). Thus, Bryant is not entitled to habeas relief based on his claim of ineffective assistance of counsel.

10. Bryant sought post-conviction relief on the basis of newly discovered evidence consisting of information from Tracy Beemer. This emerged as a claim based on *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

    a. The Indiana Court of Appeals correctly recognized that *Brady* was the controlling federal authority. *Bryant II,* at pp. 28-29. *Brady* "has been on the books since 1963 and easily qualifies as clearly established law." *Steidl v. Fermon,* 494 F.3d 623, 628 (7th Cir. 2007).

    b. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). The

prejudice element requires that there be a reasonable probability that the result of the proceeding would have been different. *Carvajal v. Dominguez,* 542 F.3d 561, 566–67 (7th Cir. 2008).

    c.    The Indiana Court of Appeals considered whether Bryant had met his burden of showing the three *Brady* requirements were present. It found first that the first requirement was not satisfied because Bryant's lawyers knew of Detective Bauman's interview of Tracy Beemer and could have contacted Beemer if they had made the effort. Bryant II, at pp. 28-29.

    d.    The Indiana Court of Appeals next determined that the element of materiality was absent because the discovery of Beemer's information would not have led to the introduction of admissible evidence and did not otherwise create a reasonable probability that the result of the proceeding would have been different. *Id.* at p. 29.

    e.    The Indiana Court of Appeals' conclusion that the withholding and the prejudice elements were absent was a completely reasonable application of the controlling Supreme Court decisions in *Brady* and *Strickler.*

    11.    "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015). Federal habeas relief is barred for any claim adjudicated on the merits in state court "unless one of the exceptions listed in 28 U.S.C. § 2254(d) obtains." *Premo v. Moore,* 131 S. Ct. 733, 739 (2011). None do. The Indiana state courts reasonably determined that Bryant's claims in *Bryant II* lacked merit. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Bryant's habeas petition presents such a situation and that petition is therefore **denied.**

    12.    Judgment consistent with this Entry shall now issue.

    13.    Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the court finds that Bryant has failed to show that reasonable jurists would find it debatable whether the petition states a valid claim of

the denial of a constitutional right.@*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appealability.

      IT IS SO ORDERED.

Date: 8/25/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Arthur John Bryant
No. 988867
Wabash Valley Correctional Facility
Special Needs Unit
P.O. Box 1111
Carlisle, IN 47838

Electronically Registered Counsel